

SO ORDERED,

*Selene D. Maddox*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: CHAD POTTS** | **CASE NO.: 18-11882** |
| **DEBTOR(S).** | **CHAPTER 13** |
| | |
| **CHAD POTTS** | **PLAINTIFF/COUNTER-DEFENDANT** |
| **VS.** | **ADV. PROCEEDING NO. 18-01052** |
| **CATHERINE A. POTTS** | **DEFENDANT/COUNTER-PLAINTIFF** |

### MEMORANDUM OPINION AND ORDER

**THIS CAUSE** comes before the Court on the Debtor/Plaintiff/Counter-Defendant's adversary proceeding to establish dischargeability of a debt, and for a dispositive ruling on the following: (1) the *Objection to Proof of Claim of Catherine A. Potts* (Dk. #23)[1]; (2) the *Response to Objection to Claim of Catherine A. Potts* (Dkt. #32), and (3) the *Objection to Confirmation of*

---

[1] References to the docket of the underlying bankruptcy case will be denoted by "Dkt." References to the docket of the adversary proceeding will be denoted by "AP Dkt." References to Proofs of Claim will be denoted by "POC." References to the exhibits presented and entered in evidence at trial will be denoted by "Ex".

*Plan and Objection to Motion to Avoid Lien.* (Dkt. #25).[2] A bench trial was conducted on September 25, 2019, after which, the parties were directed to brief the legal issues raised. The briefing schedule concluded on November 25, 2019. At that time, the Court took this matter under advisement. The Court is now ready to rule.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (I) (determinations as to the dischargeability of debts).

## II. FACTS AND PROCEDURAL HISTORY

The Debtor, who is also both Plaintiff and Counter-Defendant in this adversary proceeding, is Chad Potts ("Chad"). The Defendant and Counter-Plaintiff is Catherine A. Potts ("Catherine"), Chad's ex-wife. Chad and Catherine were married on January 26, 2008, and at the time of the marriage, Chad was already the owner of real property in the form of a tract of land and house located at 181 County Road 346, Glen, Mississippi (the "Property"). He had been the sole owner of the Property since purchasing it in 1994.

In 2009, Chad executed a Warranty Deed (Ex. #4) conveying the Property to both himself and Catherine, with each of them receiving a one-half (1/2) undivided interest in the Property as joint tenants with rights of survivorship and not as tenants in common. Chad and Catherine lived together in the Property until 2015, when they filed for divorce on grounds of irreconcilable

---

[2] Both objections were effectively consolidated into the instant adversary proceeding by an interlocutory order entered by Judge Jason D. Woodard on August 23, 2018. (Dkt. #39). The underlying bankruptcy case and adversary proceeding were originally assigned to Judge Woodard before being reassigned to the above-signed on November 1, 2018.

differences. (Ex. #1). On May 8, 2015, Alcorn County Chancellor John A. Hatcher entered a Final Corrected Judgment of Divorce (Ex. #2) which, among other things:

1. identified the Property as marital property;

2. divested title of the Property from Catherine and Chad as joint tenants with rights of survivorship and vested sole ownership in Chad;

3. ordered Catherine to execute a Warranty Deed conveying her one-half undivided interest to Chad; and

4. awarded Catherine a judicial lien on the Property in the amount of $25,491.25.

In the Final Corrected Judgment, the Chancellor specifically considered the initial contribution Chad made to the marriage through his prior ownership of the Property, and he awarded Chad a credit in the property division for his role in bringing the Property into the marital estate in the first place. Nevertheless, the Chancellor concluded that Catherine was entitled to recompense for the loss of her interest in the Property, which was to be satisfied by direct payments from Chad and secured by the judicial lien. Pursuant to the Chancellor's order, Chad was to make monthly payments of $212.43 to Catherine to be applied towards the lien (principal only), with four percent (4%) per annum interest to accrue on any balance not paid in full on or before September 30, 2015.

Unfortunately, Chad failed to make payments to Catherine as contemplated by the Final Corrected Judgment, and Catherine repeatedly brought contempt charges against Chad. As a result of Chad's failure to make the required payments, the balance owed to Catherine ballooned to $40,017.46 (including attorney's fees) in an order (Ex. #8) entered by the Chancellor on October 3, 2017.

On May 14, 2018, Chad filed his petition for Chapter 13 bankruptcy in Case No. 18-11882. (Dkt. #1). In Section 3.4 of his proposed Chapter 13 plan (Dkt. #15), Chad sought to avoid Catherine's judicial lien in the amount of $29,991.25. Two months later, Catherine filed a Proof of Claim (POC #6), asserting a claim of $40,017.46 based on the "Terms of divorce decree dated 5/8/15." It further states that the claim is entitled to priority under 11 U.S.C. § 507(a) as it represents "Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)." The proof of claim, however, does not specifically assert a security interest despite the existence of the judicial lien.[3]

On July 5, 2018, Chad filed an objection to this proof of claim denying that the debt owed to Catherine should be considered domestic support, denying that it was entitled to priority treatment, and denying that it should be exempted from discharge. (Dkt. #23). Four days later, Catherine filed an objection to confirmation of the Chapter 13 plan challenging Chad's attempt to avoid the judicial lien. On June 18, 2019, this Court granted the Trustee's motion to confirm Chad's Chapter 13 plan with the treatment of Catherine's claim held in abeyance pending the resolution of the instant adversary proceeding. (Dkt. #58). Two days later, the plan was confirmed subject to that order. (Dkt. #60).

The conditionally confirmed plan contains the following relevant terms:

1. Chad's plan payments were to be $116.00 per week.
2. Chad was to pay $455.77 directly to Mississippi Land Bank, ACA for the mortgage secured by the Property.

---

[3]While the Court notes that Catherine's proof of claim identifies the debt as a priority unsecured debt but does not assert that it is a secured debt, all the subsequent filings by both Catherine and Chad make plain that the debt arises from a judicial lien. For purposes of this memorandum and opinion, the Court concludes that, consistent with the arguments and expectations of the parties as well as other bankruptcy courts in the Fifth Circuit, the judicial lien represents a secured debt, regardless of whether it is entitled to priority and/or is avoidable. *See generally In re White*, 408 B.R. 677, 682 (Bankr. S.D. Tex. 2009).

3. Chad was to pay a cram-down value of $14,347.24 to Commerce Bank for a loan secured by a 2008 Chevrolet truck.
4. The plan proposed to avoid three judgment liens secured by the Property (one of which was Catherine's judicial lien). No objection was made by the other two judgment lienholders.
5. Chad would pay $4194.51 towards a priority claim from the IRS.
6. Chad would pay a total of $3780.00 pro rata on timely filed allowed unsecured claims.

Chad filed the instant adversary proceeding seeking a ruling that Catherine's judicial lien against the Property is fully dischargeable and thus can be avoided through his Chapter 13 plan. Initially, and post consolidation of the additional matters above, the parties focused on the issue of whether Catherine's lien should be considered a domestic support obligation and thus entitled both to non-dischargeability and to priority. At the Pre-trial Conference, however, the Court advised the parties to also consider the question of whether the judicial lien was avoidable in light of the Supreme Court's holding in *Farrey v. Sanderfoot*, 500 U.S. 291 (1991).

### III. DISCUSSION

There are two interrelated issues raised by the parties: (1) whether the judicial lien should be characterized as a domestic support obligation which is both nondischargeable under 11 U.S.C. § 523 (a)(5)[4] and, thus, entitled to priority, and (2) whether the judicial lien is subject to avoidance under the rule announced by the Supreme Court in *Sanderfoot*. The Court will consider each in turn.

**A.    The Judicial Lien Does Not Represent a Domestic Support Obligation**

While an individual's debts are generally dischargeable in bankruptcy, § 523 lists several exceptions to discharge, two of which are relevant to debts which arise in the course of a divorce. First, § 523(a)(5) bars discharge of a domestic support obligation ("DSO") owed to a former spouse

---

[4] Except where stated otherwise, all subsequent statutory references will be to Title 11 of the U.S. Code.

or child. 11 U.S.C. § 523(a)(5). Second, § 523(a)(15) bars discharge of all other non-DSO debts owed to a former spouse or child arising from a divorce proceeding. 11 U.S.C. § 523(a)(15). A key distinction between the two provisions is that § 523(a)(15) does *not* apply in Chapter 13 cases such as the one at bar. *In re Humphries*, 516 B.R. 856, 864 (Bankr. N.D. Miss. 2014). *See also* § 1328(a)(2)(wherein § 523(a)(15) is absent from list of debts that cannot be discharged). Only debts arising from divorce proceedings which can be characterized as DSOs are presumptively entitled to nondischargeability under Chapter 13. *Id.*

The question of whether a debt arising from a divorce proceeding represents a DSO is a matter of federal bankruptcy law, as opposed to state law, and the bankruptcy court is not bound by whatever labels were used to describe the debt in the domestic relations proceeding. *In re Dennis,* 25 F.3d 274, 277-78 (5th Cir. 1994). Instead, the Court may independently evaluate the divorce or separation decree. *Id.* There is no bright-line rule by which to measure whether a debt is a DSO, but rather several factors to be considered. *In re Humphries*, 516 B.R. at 865 (citing *In re Sheffield*, 349 B.R. 484, 488 (Bankr. N.D. Miss. 2006)).

The *Sheffield* factors identified by Judge Woodard in *In re Humphries* were articulated by Judge Houston in a pre-BAPCPA opinion and include the following:

> 1. Will the obligation terminate on the remarriage of the other spouse?
> 2. What are the relative earning capacities of the parties?
> 3. Are the payments being made directly to the other party?
> 4. Is the payment enforceable by contempt?
> 5. How do the parties treat the obligation for tax purposes?
> 6. What are the reasonable and necessary living expenses of the receiving spouse?
> 7. Is the obligation subject to modification if economic circumstances change?
> 8. What was the nature of the property awarded to the other spouse, e.g., the wife was awarded an automobile with the husband to make payments thereon-was the automobile necessary for the wife's livelihood? The transportation of a dependent?

*In re Sheffield*, 349 B.R. at 489.

The courts are not obligated to treat each factor equally, but may instead accord the appropriate weight to each, given the subjective facts of the case. *Id*. Whether a particular debt is nondischargeable—which in this instance means "whether the debt is a DSO and falls under §523(a)(5)"—is an issue that must be proven by a preponderance of the evidence with the burden of proof to be carried by the party challenging dischargeability (in this case, Catherine). *See Grogan v. Garner*, 498 U.S. 279, 291 (1991) (preponderance of evidence standard applies to all discharge exceptions contained in § 523(a)); Fed. R. Bankr. P. 4005. In other words, Catherine must present sufficient evidence that Chad's payment obligations are support, maintenance, or alimony.

    Applying the *Sheffield* factors to this case, the Court finds as follows:

    1. Chad's obligation to pay towards the judicial lien would not have terminated upon Catherine's remarriage. This factor weights against the debt being a DSO.

    2. The relative earning capacities were not a factor in the chancery court's determination of the amount of Chad's obligation under the divorce decree. The testimony presented to this Court at trial was inconsistent, with both Chad and Catherine giving sparse information about their respective gross and net earnings. The Court is not persuaded that this factor favors either party.

    3. Chad is required to make all payments directly to Catherine rather than a creditor or other third party. This factor weighs in favor the debt being a DSO.

    4. The judgment is enforceable by contempt against Chad. This factor also weighs in favor of the debt being a DSO.

    5. Chad testified that he did not claim any of the funds that he paid to Catherine post-divorce as alimony on his tax returns. This factor weighs heavily against the debt being a DSO.

6. While Chad speculated that Catherine could afford to pay her living expenses without his monthly payments to her, Catherine testified that she depended on the money that Chad was supposed to pay her to help cover her living expenses. But the evidence presented by Catherine is speculative and devoid of any documentary evidence or testimony about what her living expenses are, besides a slight increase in rent at her new residence. While a close question, the Court finds that this factor at best weighs narrowly in favor of the debt being a DSO.

7. No evidence was submitted suggesting that the obligation is subject to modification if economic circumstances change. This factor weighs against the debt being a DSO.

8. The "property awarded to the other spouse" was not property at all but rather an obligation to compensate Catherine for her loss of an interest in the homestead. This factor weighs against the debt being a DSO.

For the record, the Court wishes to make clear that a determination of whether a judicial lien such as the one under consideration represents a DSO or simply a property settlement is a fact-intensive query. Nothing in this opinion should be construed as announcing a bright line rule on the intersection of § 523(a)(5) with judicial liens created through the transfer of marital property, and a record with different facts or perhaps better developed facts might yield a different result. Consequently, in any future Chapter 13 cases where the debtor attacks the dischargeability of an award secured by a judicial lien on the grounds that it is a property settlement rather than a DSO, the Court will analyze the debt under the factors identified above, and attorneys in such cases would be wise to consider how the *Sheffield* factors apply to the particulars of their situations.

In this case, however, upon review of the record before it, the Court concludes that Catherine has failed to prove by a preponderance of the evidence that the judicial lien created by the Final Corrected Judgement represents a DSO entitled to both nondischargeability and priority as opposed to a property settlement lien that may normally be discharged in Chapter 13.

**B.    The Judicial Lien Is Not Subject to Avoidance**

The Court's conclusion that the judicial lien is a property settlement is not dispositive of the case. The Supreme Court's opinion in *Farrey v. Sanderfoot*, 500 U.S. 291 (1991) identifies a scenario relevant to these proceedings wherein a judicial lien imposed by a property settlement may nevertheless be immune to discharge.

The facts of *Sanderfoot* are quite similar to the case at bar. The Petitioner and Respondent ("Farrey" and "Sanderfoot," respectively) were a married couple from Wisconsin who divorced in 1986. *Sanderfoot*, 500 U.S. at 292. The divorce decree awarded each of them one-half of their net $60,600.68 marital estate, with Sanderfoot receiving sole title to real estate including the marital home that had been jointly-owned before the divorce. *Id.* at 293. The decree also directed Sanderfoot to pay Farrey half the difference in the value of their net assets, an award secured by a judicial lien on the aforementioned property transferred to him through the decree. *Id.* Sanderfoot never paid and instead filed for Chapter 7 bankruptcy, listing the marital home as exempt homestead property and moving to avoid Farrey's lien pursuant to 11 U.S.C. § 522(f)(1) under the theory that Farrey's judicial lien impaired his homestead exemption. *Id.* at 293-94.

While the bankruptcy court denied Sanderfoot's motion to avoid lien, the District Court reversed, concluding that the lien was avoidable because it "is fixed on an interest of the Debtor in the property." *Id.* at 294 (quoting *In re Sanderfoot,* 92 B.R. 802 (E.D. Wis. 1988)). A divided panel of the Seventh Circuit Court of Appeals affirmed the District Court. *Id.* at 294-95. Writing

in dissent, Judge Posner argued that "to avoid a lien under § 522(f), a debtor must have an interest in the property at the time the court places the lien on that interest" and "because the same decree that gave the entire property to Sanderfoot simultaneously created the lien in favor of Farrey, the lien did not attach to a preexisting interest of the husband." *Id.* at 295.

The Supreme Court unanimously reversed the Seventh Circuit and effectively adopted Judge Posner's reasoning. *Id.* Section 522(f)(1) provides in relevant part:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien **on an interest of the debtor in property** to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–
>
> (1) a judicial lien . . . .

11 U.S.C. § 522(f)(1) (emphasis added). The *Sanderfoot* Court focused on the question of whether a judicial lien impairs an exemption where the Debtor's interest in the exempt property was not preexistent but rather was created simultaneously with the lien through judicial decree. *Sanderfoot*, 500 U.S. at 296. The Court answered this question in the negative:

> The statute does not say that the debtor may undo a lien on an interest in property. Rather, the statute expressly states that the debtor may avoid "the fixing" of a lien on the debtor's interest in property. The gerund "fixing" refers to a temporal event. That [temporal] event—the fastening of a liability—presupposes an object onto which the liability can fasten. The statute defines this preexisting object as "an interest of the debtor in property." Therefore, unless the debtor had the property interest to which the lien attached at some point before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).

*Id.* at 296. Applying that reasoning to the case before it, the Court noted that Sanderfoot and Farrey owned the marital property jointly until the decree "transferred Farrey's previous interest to Sanderfoot and, again simultaneously, granted a lien equal to that interest minus the small amount of personal property she retained." *Id.* at 300.

The *Sanderfoot* holding was further expanded in *In re Stampley*, an unpublished bankruptcy opinion issued by Judge Kirscher in Montana. 2012 WL 5499837 (Bankr. D. Mont. Nov. 13, 2012). *Stampley* also addressed a divorce scenario in which the chancellor granted sole ownership of the marital property to the husband subject to a judicial lien which would have required him to eventually pay her the value of her interest in the property. 2012 WL 5499837 at *1-3. Similar to the case before the Court, Stampley filed for bankruptcy (Chapter 7, in this case) and sought to avoid his ex-wife's judicial lien on the grounds that it was not a domestic support obligation but rather a property division. *Id.* at *3. Stampley also argued that the subject property had always been solely in his name. *Id.*

The bankruptcy judge rejected Stampley's position and reiterated the central holding of the *Sanderfoot* Court: that an ex-spouse's judicial lien stemming from a dissolution proceeding "does not fix on an interest of the Debtor which existed prior to the dissolution and is thus not avoidable under § 522(f)(1)(A)." *Id.* at 6. The fact that Stampley's ex-wife was never on the title to the homestead was irrelevant as, under Montana law, "[e]ach spouse is considered to have a common ownership in marital property that vests immediately preceding the entry of the decree of dissolution." *Id.* at 5 (quoting Mont. Code Ann. § 40-4-202(3)).

Applying the foregoing analysis to the matter at hand, the Court reaches the following conclusion. First, the fact that the Property belonged solely to Chad prior to the marriage is not relevant. What matters is that it was owned by Chad and Catherine jointly and as tenants in the entirety at the time the divorce decree vested sole ownership in Chad while simultaneously creating a judicial lien in favor of Catherine. The scenario parallels that of *Sanderfoot* and its progeny, and the Court finds that case controlling. Consequently, Chad's request that the judicial lien be avoided is denied. Said judicial lien is a secured debt, and while this Court has by prior order conditionally

confirmed Chad's Chapter 13 plan with regard to all other creditors, the plan's failure to provide for Catherine's judicial lien means that her objection to confirmation must be sustained.

## IV.  CONCLUSION

Based on the foregoing factual and legal analysis, it is hereby ORDERED:

1. That the Plaintiff's Objection to the Defendant's Proof of Claim is OVERRULED;

2. That the Defendant's Objection to Confirmation is SUSTAINED;

3. That the Debtor shall within fourteen (14) days from the entry of this Order file a Motion to Modify the conditionally confirmed Chapter 13 plan that provides for the Defendant's allowed Proof of Claim as required under 11 U.S.C. § 1325(a)(5)(B)(ii); and

4. Thereafter, the Trustee will modify the wage order as needed to effectuate this order.

##END OF ORDER##